UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ANDRA CHERI MORELAND, APRIL PUCK, BRITTANY WILCOX, BROOKE MARRIN, CAMILA DAVALOS, DENISE TRLICA, EMILY SEARS, INA SCHNITZER, JAIME LONGORIA, JAMIE MIDDLETON, JENNIFER ARCHULETA, JESSICA BURCIAGA, JESSICA HINTON, JESSICA ROCKWELL, LINA POSADA, LUCY PINDER, MARIANA DAVALOS, MAYSA QUY, RHIAN SUGDEN, ROSIE WICKS, TARA LEIGH PATRICK, and URSULA MAYES,<br><br>Plaintiffs,<br><br>v.<br><br>KLADECK, INC., doing business as King of Diamonds,<br><br>Defendant. | Case No. 21-CV-1975 (NEB/TNL)<br><br><br><br><br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT |

Kladeck, Inc., the owner and operator of the King of Diamonds Gentlemen's Club, promoted its strip club by using Plaintiffs' images without their permission. Plaintiffs assert that Kladeck violated the Lanham Act and Minnesota law by doing so. Kladeck moves to dismiss these claims. For the reasons below, the motion is denied.

## BACKGROUND

Kladeck ran several advertisements for its strip club on social media featuring images of Plaintiffs—who are professional models—without their consent.[1] (ECF No. 1 ("Compl.") ¶¶ 1–4, 9–29, 37, 50–59.) In doing so, Kladeck allegedly conveyed and suggested that Plaintiffs endorsed the club or are otherwise affiliated with it. (*Id.* ¶¶ 60–61.) Kladeck used images of Plaintiffs to drive traffic to its club and increase its revenue, and allegedly knew or should have known it had no right to use Plaintiffs' images. (*Id.* ¶¶ 62–63, 65.) Kladeck never hired or contracted with Plaintiffs to advertise, promote, market, endorse, or participate in the club, or otherwise sought Plaintiffs' permission to use their images. (*Id.* ¶¶ 68–69.) Plaintiffs maintain that they would not choose to promote Kladeck's club because being affiliated with the club could damage their reputations and brands—making it harder for them to obtain future work of their choosing. (*Id.* ¶ 5.)

The Complaint asserts several claims against Kladeck: (1) false endorsement and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of Minnesota common law of right of publicity through appropriation; (3) negligence; (4) violation of Minnesota's Uniform Deceptive Trade Practices Act ("MDTPA"), Minn.

---

[1] The Complaint cites to Kladeck's social media posts containing Plaintiffs' images. (Compl. ¶ 56.) Plaintiffs also submitted screenshots of these social media posts, each of which includes a photograph of one or more plaintiff (including their faces), and text promoting Kladeck's club. (ECF No. 19-3.) Kladeck did not identify Plaintiffs by name in the posts, but one plaintiff was identified by a non-party in the comment section of one post. (*Id.* at 16.)

2

Stat. § 325D.44; and (5) unjust enrichment. (Compl. ¶¶ 78–156.) Kladeck now moves to dismiss all claims.

## ANALYSIS

### I.      Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At this stage in the litigation, the Court accepts as true all factual allegations in the Complaint and draws all reasonable inferences in Plaintiffs' favor. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). The Court assesses the plausibility of the Complaint considering only the materials that are necessarily embraced by the pleadings and are exhibits to the Complaint. *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 850 (8th Cir. 2020). When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d).

## II.   Count I: Lanham Act Claims

Plaintiffs assert two claims under the Lanham Act: false endorsement and false advertising.² The Lanham Act provides that anyone who "in connection with any goods or services . . . uses in commerce any . . . false or misleading representation of fact" that:

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> 
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "Subsection (a)(1)(A) is referred to as the false endorsement prohibition; subsection (a)(1)(B) is referred to as the false advertising prohibition." *Am. Ass'n of Orthodontists v. Yellow Book USA, Inc.*, 434 F.3d 1100, 1102 (8th Cir. 2006).

### 1.   *False Endorsement Claim*

The elements of a Lanham Act false endorsement claim are that the defendant "(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services." *Burck v. Mars, Inc.*, 571 F. Supp. 2d

---

² Plaintiffs do not assert an independent unfair competition claim under the Lanham Act. (ECF No. 19 at 11 n.17.)

4

446, 455 (S.D.N.Y. 2008) (citations omitted). Kladeck argues that Plaintiffs fail to plausibly allege a false affiliation or likelihood of confusion.[3]

*False or misleading representation of fact.* The Complaint sufficiently pleads endorsements that were false or misleading. "An entity can make the false or misleading representation that a celebrity endorses a product by using that celebrity's image or persona." *Roberts v. Bliss*, 229 F. Supp. 3d 240, 249 (S.D.N.Y. 2017). Kladeck asserts that because its social media postings of Plaintiffs' images do not include their names or identifying information, the postings do not suggest that Plaintiffs are affiliated with or endorsing the King of Diamonds club. The Court disagrees. The Complaint includes plausible allegations that Kladeck's social media posts contained endorsements that were false or misleading because it alleges that Plaintiffs never endorsed the King of Diamonds club and that Kladeck posted Plaintiffs' images on its social media pages displaying the club name and advertising events at the club. (Compl. ¶¶ 56–61; ECF No. 19-3.) These endorsements are "fairly attributed to Plaintiffs because their pictures are juxtaposed with 'text referencing [Kladeck's] club[].'" *Pinder v. S. DiCarlo, Inc.*, No. 1:18-CV-00296 (BKS/ATB), 2020 WL 437000, at *4 (N.D.N.Y. Jan. 28, 2020) (citing *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 245 (S.D.N.Y. 2019)).

---

[3] At oral argument, Kladeck conceded that it posted Plaintiffs' images on social media to draw customers to its club and thus do not contest the commerce-related elements here.

*Likelihood of confusion.* A Lanham Act false endorsement claim "does not require celebrity, only a likelihood of consumer confusion." *Bondar v. LASplash Cosms.*, No. 12 Civ. 1417 (SAS), 2012 WL 6150859, *7 (S.D.N.Y. 2012). Courts have recognized "a level of consumer recognition short of celebrity—as the term is usually understood—capable of causing consumer confusion."[4] *Id.* at *7 & n. 78 (collecting cases). In this Circuit, courts consider six factors in evaluating a likelihood of confusion: (1) "the strength of the plaintiff's mark"; (2) "the similarity between the plaintiff's and defendant's marks"[5]; (3) "the degree to which the allegedly infringing product competes with the plaintiff's goods"; (4) "the alleged infringer's intent to confuse the public"; (5) "the degree of care reasonably expected of potential customers"; and (6) "evidence of actual confusion." *Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005) (citing *SquirtCo. v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)); *see Dryer v. Nat'l Football League*, No. 09-CV-2182 (PAM/SRN), 2010 WL 11469574, at *7 (D. Minn. Oct. 25, 2010) (applying *SquirtCo* factors to false endorsement claim). "Likelihood of confusion is a question of fact." *Mut. of Omaha*

---

[4] On the other hand, "the misappropriation of a completely anonymous face could not form the basis for a false endorsement claim, because consumers would not infer that an unknown model was 'endorsing' a product, as opposed to lending her image to a company for a fee." *Bondar*, 2012 WL 6150859, at *7.

[5] The similarity-of-the-marks factor is unlikely relevant here because Plaintiffs' marks are the only marks at issue. *See, e.g., Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1188 (D. Neb. 2015) (explaining that "the degree of similarity is not a relevant criterion, because only Infogroup's marks are at issue—Infogroup's theory is that DatabaseUSA is using Infogroup's marks in a manner that could confuse the public").

6

*Ins. Co. v. Novak*, 836 F.2d 397, 398 (8th Cir. 1987). The parties appropriately focus on the alleged strength of Plaintiffs' marks, and the Court will do the same.

Kladeck argues that Plaintiffs fail to plausibly allege facts surrounding the strength of their marks—that is, that they are celebrities or public figures whose images can give rise to consumer confusion. (ECF No. 14 ("Def's Br.") at 10–11.) "[T]he 'mark' is the plaintiff's persona and the 'strength of the mark' refers to the level of recognition that the plaintiff has among the consumers to whom the advertisements are directed." *Pinder*, 2020 WL 437000, at *4 (citations omitted). In *Pinder*, the plaintiffs supported their claim that they are "well-known professional models and actresses" with more specific facts than those found in the Complaint:

> Plaintiffs allege that they have appeared in various well-known magazines, television shows, and movies. Plaintiffs also allege that they have a wide social media following, which includes more than 4 million followers for Plaintiff Voronina, and "more than three million Facebook followers, 740,000 Instagram followers, and nearly 400,000 Twitter followers" for Plaintiff Electra.

*Id.* at *5 (citations omitted). The court found these allegations "*more than sufficient* to support the conclusion that their images carry some level of public recognition." *Id.* (emphasis added, citing *Mayes v. Summit Ent. Corp.*, No. 1:16-CV-06533 (NGG) (ST), 2018 WL 566314, at *5 (E.D.N.Y. Jan. 18, 2018), *report and recommendation adopted in part, rejected in part on other grounds*, 287 F. Supp. 3d 200, 205 (E.D.N.Y. 2018) (noting that defendants did not object to the denial of dismissal of false endorsement claim)).

The Complaint does not provide such detailed factual allegations about Plaintiffs.[6] Instead, it alleges that each Plaintiff is a professional model, that "Plaintiffs, through their careers in modeling, attractiveness, and individually distinctive physical looks, have all attained a degree of fame and celebrity," and that "[e]ach Plaintiff enjoys a substantial social media following and/or has appeared in numerous publications, shows, productions, or paid appearances." (Compl. ¶¶ 9–29, 82–83.) Plaintiffs maintain that these allegations satisfy the notice pleading standard. *See generally Kia Motors Am., Inc. v. Autoworks Distrib.*, No. 06-CV-156 (DWF/JJG), 2006 WL 2943306, at *2–3 (D. Minn. Sept. 28, 2006) (finding that a § 1225(a)(1)(A) claim satisfied notice pleading requirements). Some courts have found similar allegations to be insufficient to state a Lanham Act false endorsement claim. *E.g.*, *Lopez v. D. Westwood Inc.*, No. 2:19-CV-01842 JCM (BNW), 2021 WL 5104548, at *3 (D. Nev. Sept. 29, 2021) ("In the dismissal, this Court found that Plaintiffs' pleadings about their modeling jobs, acting credits, and social media numbers were 'pertinent' but did not 'sufficiently describe *how*' they were well-known.") (emphasis in original), *report and recommendation adopted*, 2021 WL 5100954 (D. Nev. Nov. 1, 2021). Other courts have found that such allegations sufficiently provided the

---

[6] Some Plaintiffs have filed complaints against other defendants that include more detailed allegations about the strength of their marks. *E.g.*, *Pinder*, 2020 WL 437000, at *4 (describing more detailed allegations about "Plaintiff Electra"—also known as Plaintiff Tara Leigh Patrick). Plaintiffs do not ask the Court to take judicial notice of these actions to buttress their strength-of-the-mark allegations; they maintain that the Complaint passes muster without them.

8

factual basis for false endorsement claims. *E.g.*, *Hinton v. Sansom St., Inc.*, No. 20-cv-1515-JMY, 2021 WL 1313107, at *4 (E.D. Pa. Apr. 7, 2021) (declining to dismiss false endorsement claim where the complaint alleged that "each Plaintiff is a well-known professional model who earns [their] livelihood modeling and licensing [their] Images to companies, magazines and individuals for the purpose of advertising products and services").

Having reviewed the Complaint and Kladeck's social media posts of Plaintiffs' images, the Court cannot conclude that it was "implausible" for any viewer to reasonably believe that Plaintiffs had endorsed the King of Diamonds club. (Def's Br. at 11.) While it may be unlikely that the public is familiar with all Plaintiffs, "it is possible that discovery will indicate that [their marks are] strong enough to cause a likelihood of consumer confusion." *Bondar*, 2012 WL 6150859, at *7. The Court finds that the Complaint sufficiently alleges the strength of Plaintiffs' marks supporting a likelihood of consumer confusion, and thus the false endorsement claim survives Kladeck's motion to dismiss.

2. *False Advertising Claim*

Kladeck contends that the Court should dismiss Plaintiffs' false advertising claim because Plaintiffs lack standing under *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). To have standing to assert a false advertising claim under the Lanham Act, Plaintiffs must show that (1) their claim falls "within the zone of interests protected by the law invoked"; and (2) their injuries were "proximately caused

by violations of the statute." *Id.* at 129 (citation omitted), 132. Kladeck asserts that Plaintiffs fail both requirements.

*Zone of interests.* To come within the zone of interests for a Lanham Act false advertising claim, Plaintiffs must allege "an injury to a commercial interest in reputation or sales."[7] *Id.* at 132. Kladeck argues that Plaintiffs' interests are not within the zone of interests protected by the Lanham Act because Plaintiffs were not competitors of the club. (Def's Br. at 14.) But the parties need not be competitors for Plaintiffs to have standing. *Lexmark*, 572 U.S. at 136; *see Syngenta Seeds, Inc. v. Bunge N. Am., Inc.*, 773 F.3d 58, 64 (8th Cir. 2014) ("The Supreme Court [in *Lexmark*] expressly rejected the requirement that challenged commercial speech be made by a competitor.").

Plaintiffs allege that:

- Kladeck "used Plaintiffs' images to bring attention from consumers to the Club and derive benefit from the some of the same qualities of Plaintiffs, including their physical look and distinctive appearances, that Plaintiffs trade on to earn income for themselves, thus competing with Plaintiffs over the very same consumer attention that contributes to the economic value of Plaintiffs' images, likenesses, identities, and trade dress in the first place," (Compl. ¶ 55);

---

[7] Kladeck cites district court opinions from the Ninth Circuit concluding that professional models who brought false advertising claims against adult entertainment venues failed to fall within the Lanham Act's zone of interest. (Def's Br. at 13–14; ECF No. 20 ("Def's Reply") at 9–10 (collecting cases).) These opinions—several of which address motions for summary judgment rather than motions to dismiss—are not controlling precedent on this Court. *See, e.g., Pinder v. 4716 Inc.*, 494 F. Supp. 3d 618, 637 (D. Ariz. 2020) (granting summary judgment for defendant because plaintiffs had not shown that "their competitive edge was affected from Defendant's advertising" and their "bare assertion that their commercial interests overlap with Defendant's" was unsupported by evidence).

- Kladeck "placed its advertisements containing the misappropriated image, likeness, identity, or trade dress of each Plaintiff on some of the very same social media marketing channels used in interstate commerce by Plaintiffs to promote both themselves and the third-party brands, products, and services Plaintiffs choose to promote," (*id.* ¶ 96);

- Kladeck's unauthorized "use is detrimental to the value Plaintiffs could otherwise obtain in commercializing Plaintiffs' images and likenesses, or Plaintiffs' advertising ideas containing Plaintiffs' images and likenesses, resulting in damages," (*id.* ¶ 77); and

- "being affiliated with [Kladeck's] strip club can harm and disparage Plaintiffs' reputations and brands and make it more difficult for Plaintiffs to obtain future work of their choosing," (*id.* ¶ 5).

Because these allegations adequately assert "an injury to a commercial interest in [Plaintiffs'] reputation or sales," *Lexmark*, 572 U.S. at 132, Plaintiffs have sufficiently alleged that they are within the zone of interests protected by the Lanham Act. *See, e.g.*, *Geiger v. C&G of Groton, Inc.*, 424 F. Supp. 3d 276, 293 (D. Conn. 2019) (finding that an injury was within the zone of interests where plaintiffs' alleged injury had "already occurred, damaged their reputation, [] allegedly stemmed from the Defendants' alleged misappropriation of their images and photos" and could be remedied with damages); *Moreland v. Beso Lounge & Rest. LLC*, No. 3:19-CV-00958 (VLB), 2020 WL 5302312, at *4–5 (D. Conn. Sept. 4, 2020) (denying motion to dismiss false advertising claim on similar facts); *Moreland v. Club 390 Corp.*, No. 18 C 7441, 2019 WL 13076638, at *3 (N.D. Ill. Aug. 26, 2019) (finding that each plaintiff adequately alleged that she had a commercial interest in her reputation and the sale of her image, likeness, and identity).

11

*Proximate injury.* Plaintiffs must also show "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising"; "that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. Alleged injuries of lost sales and damage to a plaintiff's business reputation "are injuries to precisely the sorts of commercial interests the [Lanham] Act protects." *Id.* at 137. And when a plaintiff alleges "reputational injury from disparagement, competition is not required for proximate cause." *Id.* at 138.

The Complaint alleges that being affiliated with Kladeck's strip club "can harm and disparage Plaintiffs' reputations and brands and make it more difficult for Plaintiffs to obtain future work of their choosing" and that Kladeck's unauthorized use of their images "is detrimental to the value Plaintiffs could otherwise obtain in commercializing Plaintiffs' images and likenesses." (Compl. ¶¶ 5, 77.) This allegation is a sufficient statement of injury. *See, e.g.*, *Geiger*, 424 F. Supp. 3d at 292 ("Plaintiffs need not allege they were commercially harmed because Defendant's customers did not subsequently hire them for modeling jobs; they only need allege an injury to a commercial interest.") (citation omitted); *Ratchford v. AEG Ventures, LLC*, No. 17 C 7368, 2019 WL 10248701, at *2 (N.D. Ill. Mar. 11, 2019) ("[B]ecause Plaintiffs allege reputational injury flowing from AEG's disparaging representation of Plaintiffs as strip-club performers, competition is not required."); *see also Club 390*, 2019 WL 13076638, at *3 & n.4 (finding that each plaintiff adequately alleged that defendant's unauthorized use of her image "proximately caused

12

injury to her reputation by attributing to her the 'strip club lifestyle'" and caused competitive injury since the parties "vie for the same dollars from the same demographic group," noting that consumers "might unwittingly spend money" at the club believing that plaintiffs worked there) (citations omitted).

For these reasons, the Court denies the motion to dismiss the false advertising claim.

### III.  Count II: Right-of-Publicity-through-Appropriation Claims

Kladeck argues that the Court should dismiss Plaintiffs' claim of right of publicity through appropriation because Minnesota courts have not recognized this type of claim. "The right to publicity protects the ability of public personae to control the types of publicity that they receive." *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 730 (8th Cir. 1995). While true that Minnesota state courts have not explicitly recognized a cause of action for a violation of the right to publicity, the Eighth Circuit has weighed in, stating its belief that "the Minnesota Supreme Court would recognize the tort of violation of publicity rights." *Id.*; *see Paisley Park Enters., Inc. v. Boxill*, 299 F. Supp. 3d 1074, 1083 (D. Minn. 2017) ("In *Ventura*, the Eighth Circuit concluded that a right of publicity exists as a matter of Minnesota common law, and that the right of publicity is distinct from the tort of invasion of privacy.") (citation omitted). The Court therefore declines to dismiss this claim.

Kladeck also contends that an appropriation claim is cognizable only if the defendant's taking was intentional, something not present here. (Def's Reply at 13.)

13

"[U]nder Minnesota . . . law, the appropriation tort is an intentional one." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 889 (8th Cir. 2015); *see Kovatovich v. K-Mart Corp.*, 88 F. Supp. 2d 975, 986–87 (D. Minn. 1999) ("To tortiously appropriate an individual's name, one must appropriate for the purpose of taking advantage of that individual's name, or reputation."). Kladeck misreads the Complaint, which specifically alleges that Kladeck "*acted intentionally* in using Plaintiffs' images" and posted the images to its social media accounts to market the club "knowing [it] did not have permission to use the images." (Compl. ¶ 117 (emphasis added).) While Kladeck cites its CEO's declaration as evidence of its lack of intent, the Court will not turn this motion to dismiss into a motion for summary judgment by considering such evidence. Fed. R. Civ. P. 12(d). For these reasons, the Court denies the motion to dismiss the right-of-publicity-through-appropriation claim.

### IV.   Count III: Negligence Claim

Kladeck also moves to dismiss the negligence claim against it. "Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). To recover for negligence, "a plaintiff must prove: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Id.* Kladeck moves to dismiss the negligence claim for failure to state the first element: the existence of a duty of care.

14

Kladeck argues that the Court should dismiss Plaintiffs' negligence claim because its conduct did not breach a recognized duty of care. (Def's Br. at 17.) "The existence of a duty of care is a threshold question because a defendant cannot breach a nonexistent duty." *Doe 169*, 845 N.W.2d at 177. "In Minnesota, the duty to exercise reasonable care arises from the probability or foreseeability of injury to the plaintiff." *Domagala v. Rolland*, 805 N.W.2d 14, 26 (Minn. 2011). Foreseeability of injury is "ordinarily 'properly decided by the court prior to submitting the case to the jury.'" *Id.* at 27 (citation omitted). To determine the foreseeability of an injury, the Court must "look to the defendant's conduct and ask whether it was objectively reasonable to expect the specific danger causing the plaintiff's injury." *Id.; see DeLuna v. Mower Cnty.*, 936 F.3d 711, 716 (8th Cir. 2019) ("[T]he key is whether a defendant had 'reasonable ground to anticipate that a particular act would or might result in any injury' to the plaintiff, even if the defendant 'could not have anticipated the particular injury which did happen.'") (citing *Christianson v. Chicago, St. P., M. & O. Ry. Co.*, 69 N.W. 640, 641 (Minn. 1896)).

The Complaint alleges that Kladeck had "a duty to exercise reasonable care in refraining from appropriating the images and likenesses of individuals from whom [Kladeck] lacked permissions, consent, or license." (Compl. ¶ 131.) It also alleges that Kladeck breached this duty by negligently hiring, training, and supervising the managers, employees, and contractors involved in Kladeck's advertising process, and that Plaintiffs suffered damages as a result of Kladeck's breach. (*Id.* ¶¶ 131–32.) Kladeck

15

argues that there is no right-of-publicity-through-appropriation claim, (Def's Br. at 17), but as explained above, federal courts have found that a right of publicity exists as a matter of Minnesota common law. *Paisley Park*, 299 F. Supp. 3d at 1083 (citing *Ventura*, 65 F.3d at 730). Viewing these allegations in the light most favorable to Plaintiffs, the Court finds that the Complaint articulates a sufficient basis for finding that Kladeck owed Plaintiffs a duty of reasonable care.[8] The motion to dismiss Plaintiffs' negligence claim is denied.

V.  **Count IV: MDTPA Claim**

After Plaintiffs complained, Kladeck took down its social media posts of Plaintiffs' images. The MDTPA "does not allow for the recovery of monetary damages"; its only

---

[8] Courts in other jurisdictions have denied motions to dismiss similar negligence claims. *E.g.*, *Souza v. Algoo Realty, LLC*, No. 3:19-CV-00863 (MPS), 2020 WL 5300925, at *9 (D. Conn. Sept. 4, 2020) ("Plaintiffs have sufficiently alleged that the Defendants owed a duty to the Plaintiffs and to consumers to refrain from publishing misappropriated and altered images for the financial benefit of the Defendants. . . . It is reasonably foreseeable that an ordinary person in the Defendants' position would have anticipated that harm would result from misappropriating, altering, and publishing images of well-recognized models for commercial purposes."); *Patrick v. KHG of San Antonio, L.L.C.*, No. SA-18-CV-00910-OLG, 2019 WL 5853338, at *3 (W.D. Tex. Apr. 1, 2019) (denying motion to dismiss negligence claim under similar circumstances); *but see Sears v. Russell Rd. Food & Beverage, LLC*, 460 F. Supp. 3d 1065, 1073 (D. Nev. 2020) (predicting that Nevada would not recognize a duty to refrain from invading the right of publicity because the Supreme Court of Nevada had "stated that the right of publicity statute 'provides a complete and exclusive remedy for the right of publicity tort'") (citation omitted); *Club 390*, 2019 WL 13076638, at *5 (dismissing negligence claims where plaintiffs did not identify any cases supporting the existence of a duty of care, and the court could not find any); *Electra v. Dreamers Cabaret, LLC*, No. 5:18-CV-2706, 2019 WL 3238504, at *2 (N.D. Ohio July 18, 2019) (dismissing negligence claim where plaintiffs failed to establish "a general duty to avoid foreseeable harm to plaintiffs' reputation, goodwill, and emotional well-being").

16

remedy is injunctive relief. *Nelson v. Am. Fam. Mut. Ins. Co.*, 262 F. Supp. 3d 835, 862 (D. Minn. 2017), *aff'd*, 899 F.3d 475 (8th Cir. 2018). Since Kladeck has taken down the posts, it argues that injunctive relief is unnecessary, requiring dismissal of the MDTPA claim. Kladeck relies on its CEO's declaration that Kladeck removed its social media posts of Plaintiffs' images and have not reposted them. Plaintiffs also assert facts beyond the pleadings, claiming that Kladeck continues to promote its club using images of other women on its social media sites. As above, the Court declines to consider evidence not incorporated into the Complaint at this stage of the litigation. The parties' arguments are better suited for summary judgment. *See, e.g., Ringdahl Architects, Inc. v. Swendsrud Constr., Inc.*, No. 16-CV-1060 (DWF/LIB), 2017 WL 5157605, at *6 (D. Minn. Nov. 6, 2017) (granting summary judgment where plaintiff had not pointed to any facts suggesting that defendants were "likely to use the Plans again or that Plaintiffs are likely to suffer any future harm that can be remedied through injunctive relief"). The motion to dismiss the MDTPA claim is denied.

### VI.    Count V: Unjust Enrichment Claim

Finally, Kladeck moves to dismiss Plaintiffs' unjust enrichment claim. To prevail on an unjust enrichment claim in Minnesota, a plaintiff "must establish an implied-in-law or quasi-contract in which the defendant received a benefit of value that unjustly enriched the defendant in a manner that is illegal or unlawful." *Ventura v. Kyle*, 825 F.3d 876, 887 (8th Cir. 2016) (citation omitted). An unjust enrichment claim may be asserted

even absent unlawful conduct "so long as it would be morally wrong for the defendant to retain the benefit generated by the failure of consideration, fraud, or mistake." *Lighthouse Mgmt. Grp., Inc. v. Deutsche Bank Tr. Co. of Americas*, 380 F. Supp. 3d 911, 920 (D. Minn. 2019); *see Holman v. CPT Corp.*, 457 N.W.2d 740, 745 (Minn. Ct. App. 1990) ("An action for unjust enrichment may be founded upon failure of consideration, fraud, or mistake, or 'situations where it would be morally wrong for one party to enrich himself at the expense of another.'") (citation omitted). Kladeck contends that the Complaint fails to allege any quasi-contractual relationship.

Plaintiffs have pleaded the basic elements and factual support for an unjust enrichment claim: that Kladeck "accepted and retained a benefit to which it was not entitled." *Phillips v. Caliber Home Loans, Inc.*, No. 19-CV-2711 (WMW/LIB), 2020 WL 5531588, at *5 (D. Minn. Sept. 15, 2020). The Complaint alleges that Plaintiffs conferred a benefit on Kladeck because their "misappropriated images and likenesses" drove "customers, business, and revenue" to the Kladeck's club. (Compl. ¶ 148; *see id.* ¶¶ 149–51.) Moreover, it adequately pleads that it would be morally wrong for Kladeck to retain the benefit obtained from its misuse of Plaintiffs' images. (*See id.* ¶¶ 151–55.)

Kladeck also argues that Plaintiffs cannot recover under unjust enrichment where the pleadings include other legal claims on which they might receive damages. Relief under an unjust enrichment theory is unavailable where "an adequate legal remedy" exists. *United States v. Bame*, 721 F.3d 1025, 1030 (8th Cir. 2013) (citation omitted). Plaintiffs

acknowledge that they "cannot simultaneously recover on both their legal and equitable claims" but maintain there is no reason to dismiss their unjust enrichment claim now. (Pls' Br. at 26–27.) The Court agrees. Because the federal rules allow for the pleading of claims in the alternative, district courts in this Circuit have declined to dismiss an unjust enrichment claim at the pleading stage, despite the existence of an adequate legal remedy. *See Bame*, 721 F.3d at 1031 (collecting cases). "At this stage, when it is still unclear whether [] Plaintiffs' other legal remedies will prevail, it is unnecessary to dismiss unjust-enrichment claims because they are pleaded in the alternative." *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 799 (D. Minn. 2020). The Court thus denies Kladeck's motion to dismiss the unjust enrichment claim.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Defendant's Motion to Dismiss Plaintiffs' Complaint (ECF No. 11) is DENIED.

Dated: May 12, 2022                                BY THE COURT:

                                                   s/Nancy E. Brasel
                                                   Nancy E. Brasel
                                                   United States District Judge

19